## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILSHAUN KING,

      Petitioner,                Case No. 2:11-CV-12836
                                    HONORABLE LINDA V. PARKER

v.

JACK KOWALSKI,[1]

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Wilshaun King ("Petitioner"), confined at the Kincross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Daniel J. Blank, Petitioner challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84. (ECF No. 1 at Pg. ID 3.) For the reasons that follow, the Court denies the petition for a writ of habeas corpus.

_____

[1] Wilshaun King is currently incarcerated at Kincross Correctional Facility, where Jack Kowalski is warden. Accordingly, the case caption is updated to read "*Wilshaun King v. Jack Kowalski*."

## BACKGROUND

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions arise from a series of fights that led to the death of Tyree Jones, who allegedly was killed when he was struck by a motor vehicle that defendant was driving. Defendant was also convicted of assault with intent to commit murder for striking Frank Sanders, Jr., with his vehicle, and assault with intent to do great bodily harm less than murder for striking Marcellus Smith on the head with a brick. At trial, defendant admitted interceding in a fight between his cousin and Smith, and punching Smith one time to get him off his cousin, but denied ever striking Smith with a brick. Although several witnesses identified defendant as the driver of a Ford Explorer that later drove through a field and allegedly struck Jones and Sanders, defendant claimed that he left the area after the fight with Smith and went to Belle Isle with his son, and that he had no knowledge of the events that occurred afterward.

*People v. King*, No. 282533, 2010 WL 98693, at *1 (Mich. Ct. App. Jan. 12, 2010).

Petitioner was convicted by a jury in the Wayne County Circuit Court. (ECF No. 1 at Pg. ID 3.) Petitioner's conviction was affirmed. *People v. King*, 2010 WL 98693, *lv. den.* 783 N.W.2d 513 (Mich. 2010).

On June 30, 2011, Petitioner, through counsel, filed a petition for a writ of habeas corpus. (ECF No. 1.) Petitioner seeks relief on the following ground:

> Petitioner's Sixth Amendment [r]ight [to] confrontation was violated when the substitute medical examiner was permitted to testify concerning facts contained within an autopsy report and anatomical chart authored by another [medical examiner].

(*Id.* at Pg. ID 5.)

On July 30, 2013, Petitioner filed a motion to hold the petition in abeyance so that he could return to the state court to exhaust a claim that his trial counsel had been ineffective for failing to convey a plea bargain offer to him. (ECF No. 9.) This Court's predecessor, Judge Avern Cohn, held the petition in abeyance and administratively closed the case on August 2, 2013. (ECF No. 10.)

On September 28, 2013, Petitioner filed a post-conviction motion for relief from judgment with the Wayne County Circuit Court. (ECF No. 14-2.) Judge Megan Maher Brennan initially granted Petitioner's motion for an evidentiary hearing on Petitioner's ineffective assistance of counsel claim. *People v. King,* No. 06-00137164-01 (Third Cir. Ct., Jan. 3, 2014); (*see also* ECF No. 11 at Pg. ID 1317-22.)

The matter was sent back to the original trial judge, Judge Annette Berry, who subsequently set aside the order to grant an evidentiary hearing and denied Petitioner's post-conviction motion for relief from judgment. *People v. King,* No. 06-00137164-01 (Third Cir. Ct., Jan. 9, 2015); (*see also* ECF No. 14-3 at Pg. ID 1441-45.) The Michigan Court of Appeals denied Petitioner leave to appeal. *People v. King,* No. 327239 (Mich. Ct. App. Oct. 2, 2016); *lv. den.* 885 N.W.2d 297 (Mich. 2016); *reconsideration den.* 890 N.W.2d 866 (Mich. 2017).

On April 8, 2017, Petitioner filed a motion to add a supplemental memorandum of law to the original petition.  (ECF No. 11.)  Petitioner sought relief on the ground that the trial court erred when it denied Petitioner's request for an evidentiary hearing on the issue of ineffective assistance of counsel.  (*Id.* at Pg. ID 1307-09.)  Judge Cohn reopened the case and granted the motion.  (ECF No. 12.)

On November 30, 2017, Petitioner filed a motion to amend the petition and to supplement the petition with the following issue: "Petitioner's Sixth Amendment right to effective assistance of counsel was violated when trial counsel failed to inform him of a plea offer during jury deliberations."  (ECF No. 16 at Pg. ID 1567.)  Judge Cohn granted the motion to amend the petition.  (ECF No. 19.)

Petitioner seeks habeas relief on the claims that he raised in his original and amended petitions.  Respondent has filed answers to the original and amended petitions.  (ECF Nos. 5, 13, 20.)   This case was reassigned to the undersigned on January 2, 2020 pursuant to Administrative Order 20-ao-003.

## STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as

it is within the "realm of possibility" that fairminded jurists could find the state court

decision to be reasonable.  *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected a portion of

Petitioner's Confrontation Clause claim involving the anatomical sketch under a

plain error standard because Petitioner failed to preserve a portion of his claim as a

constitutional issue at the trial court level.  (ECF No. 6-9 at Pg. ID 892.)  AEDPA

deference applies to any underlying plain-error analysis of a procedurally defaulted

claim.  *See Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).[2]

## DISCUSSION

### A. Claim # 1.  Sixth Amendment Right to Confront Witnesses

---

[2] Respondent urges this Court to deny this portion of the claim on the ground that it is procedurally defaulted because Petitioner failed to object at trial.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  Petitioner's unpreserved Confrontation Clause claim is related to his preserved Confrontation Clause claim.  Because the same legal analysis applies to both the preserved and unpreserved claims, it would be easier to simply address the merits of the unpreserved Confrontation Clause claim.

Petitioner argues that his Sixth Amendment right to confrontation was violated when a substitute medical examiner who had not performed the autopsy on the victim was permitted to testify at trial about the findings from the autopsy and testify to the cause of death.  (ECF No. 1 at Pg. ID 5.)

The Wayne County Medical Examiner's Office received information from the police and had its own investigator, who went to the scene and reported his findings. (ECF No. 6-4 at Pg. ID 535.)  Doctor Melissa Pasquale-Styles was the medical examiner who performed the autopsy in August of 2005.  (ECF No. 6-3 at Pg. ID 510.)  Dr. Pasquale-Styles left Wayne County to take a job in New York before Petitioner's 2007 trial.  (ECF Nos. 6-3 at Pg. ID 510; 6-4 at Pg. ID 528, 532.)

At the beginning of trial, Petitioner's retained counsel filed a motion in limine, objecting to any opinions contained within the victim's autopsy report being admitted into evidence.  (ECF No. 6-2 at Pg. ID 262-64.)  As to the facts contained within the autopsy report, retained counsel had no objection to their admission because they were not testimonial.  (*Id.* at Pg. ID 263.)  The prosecutor responded that the substituted medical examiner, Wayne County's Chief Deputy Medical Examiner Dr. Cheryl Lowe, would testify about her opinion and that counsel would have the opportunity to cross-examine her.  (*Id.* at Pg. ID 264).  The judge then denied Petitioner's motion.  (*Id.* at Pg. ID 265.)

7

At trial, Dr. Lowe testified that she reviewed the victim's autopsy report. (ECF No. 6-3 at Pg. ID 501-02.)  The victim's injuries were documented in an anatomical sketch.  (*Id.* at Pg. ID 503-04.)  Dr. Lowe testified that the victim had no tire marks on his body or clothing.  (*Id.* at Pg. ID 511-12; ECF No. 6-4 at Pg. ID 528, 530, 535.)  The top right side of the victim's head had scrapes and contusions. (ECF Nos. 6-3 at Pg. ID 504; 6-4 at Pg. ID 526.)  The victim had an abrasion on his right cheek and a fractured jawbone.  (ECF Nos. 6-3 at Pg. ID 504; 6-4 at Pg. ID 524.)  The victim's left arm also had bruises and abrasions.  (ECF No. 6-3 at Pg. ID 505.) The victim's right wrist was broken and he had a scrape on the palm of his right hand.  (*Id.* at Pg. ID 505, 513-14.)  At the time that victim was discovered, he had no drugs or alcohol in his system and had been dead for several hours.  (*Id.* at Pg. ID 507; ECF No. 6-4, at Pg. ID 529-30.)

Dr. Lowe testified that it was her opinion that the victim died from head and skull injuries after he was intentionally struck by a motor vehicle.  (ECF No. 6-3 at Pg. ID 502, 506-09.)  Underneath was a skull fracture, "described as being depressed or caved in and comminuted or shattered," that "could have been caused by a blunt force injury."  (*Id.* at Pg. ID 504; ECF No. 6-4 at Pg. ID 523.)  The victim's brain stem was torn, which Dr. Lowe opined resulted in nearly instantaneous death.  (ECF No. 6-3 at Pg. ID 506.)  Dr. Lowe testified that the victim's injuries were consistent with his body being propelled in the air, becoming "a projectile at some point and

8

str[iking] some hard object." (ECF No. 6-4 at Pg. ID 539.) She conceded that his head could have hit the utility pole in the field where he was found. (ECF Nos. 6-3 at Pg. ID 507-08, 512; 6-4 at Pg. ID 538-39.) The victim's left lower "leg bone was fractured and protruding out of a hole in the skin and his knee cap was also dislocated." (ECF No. 6-3 at Pg. ID 505.) Dr. Lowe testified that on the victim's legs was "the classic so-called bumper injury," which she opined confirmed that the victim was struck while standing. (*Id.* at Pg. ID 505-06, 511; ECF No. 6-4 at Pg. ID 537.) While the victim's injuries were also consistent with blunt force trauma, like that from a beating, Dr. Lowe testified there was no information from the police that the victim had been beaten, and Dr. Lowe believed that a substantial amount of force would have been required to inflict his numerous injuries. (ECF No. 6-4 at Pg. ID 530, 536-37.)

The Michigan Court of Appeals rejected Petitioner's claim, concluding that there was no violation of Petitioner's Sixth Amendment right to confrontation:

> Dr. Lowe testified regarding her *own* opinions and conclusions, and, although Dr. Lowe based her opinions in part on facts obtained during the autopsy performed by another doctor, defendant did not challenge the admissibility of those facts and specifically agreed that "pure facts" contained in the autopsy report could be offered at trial.

*People v. King*, 2010 WL 98693, at *3 (emphasis in original).

After citing a number of federal and state law cases in support of their decision, the Michigan Court of Appeals again explained:

> In this case, defendant did not contest the admissibility of the factual data from the autopsy report, and Dr. Lowe testified at trial about her own opinions and conclusions based on that data; the opinions and conclusions of the nontestifying examiner who conducted the autopsy were not admitted.  Because defendant had the opportunity to confront Dr. Lowe and cross-examine her regarding her opinions, defendant's Sixth Amendment right of confrontation was not violated.

*People v. King*, 2010 WL 98693, at *6.

The Michigan Court of Appeals also rejected Petitioner's claim that Dr. Lowe's use of the anatomical sketch violated his right to confrontation:

> Dr. Lowe testified that she independently reviewed the sketch and compared it to other evidence from the autopsy, including photographs of the victim's injuries, and concluded that the diagram was an accurate representation of the victim's injuries. Because Dr. Lowe independently verified the accuracy of the sketch, and was present at trial and subject to cross-examination concerning the sketch, defendant has not established a plain error under the Confrontation Clause.

*Id*.

Out-of-court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 59, 63 (2004).  However, the Confrontation Clause is not implicated, and does not need not be considered, when non-testimonial hearsay is at issue.  *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006).  To be considered as "testimonial" for purposes of the Sixth Amendment, the evidence must have a

10

"primary purpose" to "establish or prove past events potentially relevant to later criminal prosecution."  *Id.* at 822.  In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay].  It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.'  1 N. Webster, An American Dictionary of the English Language (1828).  'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'  *Ibid.*  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

*Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S. at 51).

The Supreme Court has held that scientific or laboratory reports which are admitted to prove a fact are testimonial statements, for purposes of the Sixth Amendment right to confrontation.  *See Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009).  Because they are testimonial, the reports cannot be admitted into evidence unless the analysts who wrote them are subject to cross-examination.  *Bullcoming*, 564 U.S. at 663; *Melendez-Diaz*, 557 U.S. at 311.

Notwithstanding the holdings in *Crawford, Melendez-Diaz,* and *Bullcoming,* it is unclear whether autopsy reports are testimonial in nature for purposes of the Sixth Amendment Confrontation Clause because autopsies are not prepared for the primary purpose of being used at a criminal trial and are often performed before it

11

has even been established that a crime has been committed and before a criminal suspect is identified. *See Williams v. Illinois*, 567 U.S. 50, 97-98 (2012) (Breyer, J., concurring) ("Autopsies are typically conducted soon after death . . . . when it is not yet clear whether there is a particular suspect or whether the facts found in the autopsy will ultimately prove relevant in a criminal trial."); *United States v. James*, 712 F.3d 79, 97-99 (2nd Cir. 2013) (explaining that routine autopsy report was not testimonial because it was completed substantially before criminal investigation began and no criminal investigations are pursued in the cases of most autopsies); *but see United States v. Ignasiak*, 667 F.3d 1217, 1229-33 (11th Cir. 2012) (concluding that, under *Crawford*, *Melendez-Diaz*, and *Bullcoming*, autopsy reports from Florida's Medical Examiners Commission, part of the Department of Law Enforcement, were testimonial).

Several federal courts have concluded that there is no clearly established Supreme Court precedent regarding whether autopsy or coroner reports are testimonial in nature. *See Mitchell v. Kelly*, 520 F. App'x 329, 331 (6th Cir. 2013) ("[T]he decision . . . [that an autopsy report was admissible as a nontestimonial business record] was not an unreasonable application of *Crawford* given the lack of Supreme Court precedent establishing that an autopsy report is testimonial."); *see also Hensley v. Roden*, 755 F.3d 724, 735 (1st Cir. 2014) (concluding that neither *Crawford* nor *Melendez-Diaz* clearly establish that autopsy reports are testimonial

for purposes of the Sixth Amendment). "Abstractly, an autopsy report can be distinguished from, or assimilated to, the sworn documents in *Melendez–Diaz* and *Bullcoming*, and it is uncertain how the [Supreme] Court would resolve the question." *Nardi v. Pepe*, 662 F.3d 107, 111 (1st Cir. 2011). In the absence of any Supreme Court caselaw which clearly establishes that an autopsy report or anatomical sketch from the autopsy is testimonial, Petitioner is not entitled to relief on his claim.

Even if the autopsy report and anatomical sketch would have been testimonial for purposes of the Confrontation Clause, there still would be no violation of the Sixth Amendment because Dr. Lowe used them to reach her own opinion and conclusions concerning the victim's cause of death. In *Williams v. Illinois,* 567 U.S. 50, 57-58 (2012), a plurality of the Supreme Court held that out-of-court statements concerning DNA evidence that are referred to by an expert who testifies for the prosecution solely for the purpose of explaining that expert's own assumptions on which his own independent expert opinion is based are not offered for their truth of the matter asserted and therefore fall outside the scope of the Confrontation Clause. Although the holding in the plurality opinion in *Williams* might not qualify as clearly established federal law, it suggests that there is no clearly established federal law which holds that a defendant's right to confrontation is violated when an expert witness testifies to forming an independent opinion after reviewing a report prepared

by another expert who does not testify. *See Barbosa v. Mitchell*, 812 F.3d 62, 67 (1st Cir. 2016) (holding that *Williams* suggests that admitting an opinion "by an expert witness who has some connection to the scientific report prepared by another whom she supervised" does not violate the right to confrontation). "Indeed, by blessing the admission of almost identical testimony by a DNA expert, the [Supreme] Court's actual holding in *Williams* might well be read as telling [this Court] that [Petitioner] is not, with respect to this issue, being held 'in custody in violation of the Constitution,' 28 U.S.C. § 2254(a)." *Id.* at 67.

In light of existing Supreme Court precedent, the Michigan Court of Appeals did not unreasonably conclude that Petitioner's Sixth Amendment right to confrontation was not violated by the admission of Dr. Lowe's testimony.

Even assuming that the trial court erred in permitting Dr. Lowe to testify about the autopsy report, Petitioner would not be entitled to relief because any error was harmless. Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001). In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. In determining whether a Confrontation Clause violation is

harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case."  *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Petitioner did not contest that Jones had been struck by a vehicle or that Jones died as a result.  Rather, Petitioner's defense at trial was that he did not drive the vehicle that struck Jones or Sanders, who survived.   In light of Petitioner's defense, the admission of Dr. Lowe's testimony did not have a substantial or injurious effect or influence upon the jury.  Petitioner is not entitled to relief on his first claim.

## B. Claim # 2.  Sixth Amendment Right to Effective Assistance of Counsel

Respondent contends that Petitioner's remaining claims, which he raised for the first time in his amended petitions for a writ of habeas corpus, are barred by the one year statute of limitations contained within 28 U.S.C. § 2244(d)(1) because the amended petitions were filed more than one year after Petitioner's conviction

became final and the additional claims do not relate back to the claims raised by Petitioner in his original habeas petition.[3]

In the statute of limitations context, "dismissal is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see also Cooey v. Strickland,* 479 F.3d 412, 415-16 (6th Cir. 2007).

Under the AEDPA, a one year statute of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court.  28 U.S.C. § 2244(d)(1).  The one year statute of limitation shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[3] A statute of limitations defense to a habeas petition is not "jurisdictional," thus, courts "are under no obligation to raise the time bar *sua sponte*." *Day v. McDonough*, 547 U.S. 198, 205 (2006).  The fact that Petitioner was granted permission to file his amended petitions does not preclude Respondent from raising a limitations defense to the claims raised in those petitions.  *See Quatrine v. Berghuis*, No. 2:10–CV–11603, 2014 WL 793626, at *6 (E.D. Mich. Feb. 27, 2014); *Soule v. Palmer*, No. 08–cv–13655, 2013 WL 450980, at *1-3 (E.D. Mich. Feb. 5, 2013).  Although Respondent could have filed an opposition to Petitioner's motions to amend his petition, Respondent was not required to do so under Federal Rule of Civil Procedure 8 until he filed answers to the amended petitions.  *See Quatrine*, 2014 WL 293636, at *6.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

Petitioner's direct appeal of his conviction ended when the Michigan Supreme Court denied Petitioner leave to appeal on July 2, 2010, following the affirmance of his conviction by the Michigan Court of Appeals on direct review.  (ECF No. 6-10.) Under the AEDPA, a petitioner has 90 days to seek certiorari with the U.S. Supreme Court.  *See Jimenez v. Quarterman*, 555 U.S. 113, 119-20 (2009).  Petitioner's judgment therefore became final on September 30, 2010, when he failed to file a petition for a writ of certiorari with the U.S. Supreme Court.  Petitioner thus had until September 30, 2011, to file his habeas petition in compliance with the one year limitations period.

Petitioner timely filed his original habeas petition on June 30, 2011. Petitioner did not, however, seek to amend his habeas petition to add his ineffective assistance of counsel claim until July 30, 2013, at the earliest, when he filed his

motion to stay the petition so that he could return to the state courts to exhaust this claim.[4]  This was well after the limitations period had passed on September 30, 2011.

When a habeas petitioner files an original petition within the one-year deadline, and later presents new claims in an amended petition that is filed after the deadline passes, the new claims will relate back to the date of the original petition only if the new claims share a "common core of operative facts" with the original petition.  *Mayle v. Felix*, 545 U.S. 644, 664 (2005).  Petitioner's ineffective assistance of counsel claim based on trial counsel's failure to relay a plea offer does not share a "common core of operative facts" with the Confrontation Clause claim based on the substitution of the medical examiner.  Thus the former claim is barred by the one year limitations period.  *See Pinchon v. Myers,* 615 F.3d 631, 643 (6th Cir. 2010).

Petitioner cited to *Missouri v. Frye,* 566 U.S. 134 (2012) and *Lafler v. Cooper,* 566 U.S. 156 (2012) in support of his claim that his trial counsel was ineffective for failing to inform him that the prosecutor had allegedly offered a plea bargain while the jury deliberated.  28 U.S.C. § 2244(d)(1)(C) indicates that the one year limitations period can run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[4] This Court construes Petitioner's July 30, 2013 motion as both a motion to amend his habeas petition to add the ineffective assistance of trial counsel claim and a motion to stay.  *See Murphy v. Elo,* 250 F. App'x 703, 704 (6th Cir. 2007).

recognized by the Supreme Court and made retroactively applicable to cases on collateral review." A federal district court has the ability to determine whether a newly recognized right has been made retroactively applicable to cases on collateral review, for purposes of this section or 28 U.S.C. § 2255 ¶ 6(3), the analogous provision of the statute of limitations for federal motions to vacate sentence. *See Wiegand v. United States,* 380 F.3d 890, 892-93 (6th Cir. 2004).

Every circuit court that has considered the issue has ruled that "neither *Frye* nor *Cooper* created a 'new rule of constitutional law' made retroactive to cases on collateral review by the Supreme Court." *In re Liddell*, 722 F.3d 737, 738 (6th Cir. 2013) (holding that *Frye* and *Cooper* did not announce a new rule of constitutional law that would permit defendant to file a successive motion to vacate sentence). The Supreme Court in *Frye* "merely applied the Sixth Amendment right to effective assistance of counsel according to the test first articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), and established in the plea-bargaining context in *Hill v. Lockhart*, 474 U.S. 52 (1985)." *Hare v. U.S.*, 688 F. 3d 878, 879 (7th Cir. 2012).

This Court also recognizes that Petitioner in his reply argues that his ineffective assistance of counsel claim "did not materialize until approximately 3 years after the conclusion of his direct appeal." (ECF No. 15 at Pg. ID 1564.) Petitioner indicates that it was not until August of 2013 that he was able to obtain an

affidavit from trial counsel admitting to failing to advise Petitioner about the plea. (*Id.*)  But according to affidavits filed by Petitioner and his father,[5] during jury deliberations, the prosecutor informed Petitioner's father about a plea offer that the prosecutor made.  (ECF No. 14-4 at Pg. ID 1464, 1478, 1494.)  According to Petitioner's father, trial counsel "neglected to inform [Petitioner] of the prosecutor's offer prior to the jury rendering its verdict.  (*Id.* at Pg. ID 1475.)

Under 28 U.S.C.§ 2244(d)(1)(D), the AEDPA's one year limitations period will begin running from the date upon which the factual predicate for a claim becomes known or could have been discovered through due diligence by the habeas petitioner—not when it was actually discovered by a given petitioner.  *See Ali v. Tennessee Board of Pardon and Paroles,* 431 F.3d 896, 898 (6th Cir. 2005); *Redmond v. Jackson,* 295 F. Supp 2d 767, 771 (E.D. Mich. 2003).  Significantly, "§ 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence . . . which supports the facts, including supporting affidavits."  *Redmond*, 295 F. Supp. at 771-72.  A habeas petitioner has the burden of proof in persuading a federal court that he exercised due diligence in searching for the factual predicate of the habeas claims.  *See Stokes v. Leonard,* 36 F. App'x 801, 804 (6th Cir. 2002).  Newly discovered information "that

---

[5] The affidavits were attached to motion to remand for an evidentiary hearing that Petitioner filed with his post-conviction appeal.  (ECF No. 14-4 at Pg. ID 1469-70, 1474.)

merely supports or strengthens a claim that could have been properly stated without the discovery . . . is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *See Jefferson v. U.S.,* 730 F.3d 537, 547 (6th Cir. 2013) (quoting *Rivas v. Fischer*, 687 F.3d 514, 535 (2nd Cir. 2012)).  Petitioner was aware of the factual predicate of his ineffective assistance of trial counsel claim at the time of his direct appeal.  Thus, the commencement of the running of the statute of limitations is not delayed pursuant to 28 U.S.C.§ 2244(d)(1)(D).

The AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010).  A habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'" and prevented the timely filing of the habeas petition.  *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Sixth Circuit has observed that "the doctrine of equitable tolling is used sparingly by federal courts." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  The burden is on a habeas petitioner to show that he is entitled to the equitable tolling of the one year limitations period. *Id*.  Here, Petitioner is not entitled to equitable tolling of the one year limitations period, because he failed to argue or show that the facts of his case support equitable tolling.  *See Giles v. Wolfenbarger,* 239 F. App'x 145, 147 (6th Cir. 2007).

The one year statute of limitations may also be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schup v. Delo,* 513 U.S. 298 (1995). *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). For an actual innocence exception to be credible under *Schlup*, such a claim requires a habeas petitioner to support his allegations of constitutional error "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner's case falls outside of the actual innocence tolling exception, because he presented no new, reliable evidence to establish that he was actually innocent of the crimes charged. *See Ross v. Berghuis,* 417 F.3d 552, 556 (6th Cir. 2005).

Finally, the Court notes that it does not have the power to grant habeas relief on Petitioner's claim that the trial court denied his motion for an evidentiary hearing on his ineffective assistance of trail counsel claim. "The Sixth Circuit [has] consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007). This is because states have no constitutional obligation to provide post-conviction remedies. *See Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). Because Petitioner sought an evidentiary hearing with respect to a claim that he raised in his post-conviction

motion, the failure by the state courts to grant him an evidentiary hearing on this claim does not entitle him to habeas relief.

Moreover, there is no clearly established Supreme Court law which recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel even on direct appeal. *See Hayes v. Prelesnik,* 193 F. App'x 577, 584-85 (6th Cir. 2006).

## CONCLUSION

For the reasons discussed above, the petition for a writ of habeas corpus is denied with prejudice.

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

The Court denies Petitioner a certificate of appealability because he failed to make a showing of the denial of a federal constitutional right.

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue a Certificate of Appealability.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 28, 2020